## Anthony v. Conemaugh Township Area School District

*Randall G. Rodkey*, for plaintiff.

*Eugene E. Fike*, of *Fike, Cascio and Boose*, for defendant.

SHAULIS, *J.*, October 1, 1974—Plaintiff in this action was employed as a remedial mathematics teacher by defendant school district for two separate school years; first, for the 1971-72 school year and, lastly, for the 1972-1973 school year. Prior to the beginning of the 1971-72 school year, the school board was notified that it would receive substantial funds through the Federal ESEA Title I program, at which time the board established additional remedial reading and mathematics classes and decided to use college graduates to teach the courses rather than rely on teachers aides as had been the custom. Consequently, plaintiff was one of the teachers employed and to be paid strictly from ESEA funds and with the understanding that this employment was under a particular or special program. Prior to beginning his first year of teaching, on August 18, 1971, the district superintendent sent a letter to plaintiff which read as follows:

"August 18, 1971

"Mr. James R. Anthony
R.D. 3
Indiana, Pennsylvania 15701

"Dear Mr. Anthony:

"At the School Board Meeting on Tuesday, August 17, 1971, I recommended that you be hired as a special remedial teacher under E.S.E.A. Title I project for 1971-72 *only* at $6,800.00 for 182 days. This recommendation was approved by the School Board.

"It is the intention of the Board to employ you for this project only, and not to employ you as part of the regular teaching staff of the school system nor as a professional employee within the definition of the school code.

Sincerely yours,
John Chobany
District Superintendent"

Plaintiff was again employed for the 1972-73 school year and on June 21, 1972, the district superintendent sent him the following letter:

"June 21, 1972

"Mr. James R. Anthony
R. D. 4, Box 204-A
Indiana, Pennsylvania 15901

"Dear Mr. Anthony:

"At the School Board Meeting on Tuesday, June 20, 1972, I recommended that you be hired as a special remedial teacher under ESEA Title I Project for 1972-73 *only* at $7,455.00 for 182 days. This recommendation was approved by the School Board.

"It is the intention of the Board to employ you for this project only, and not to employ you as part of the regular teaching staff of the school system nor as a professional employee within the definition of the school code.

Sincerely yours,
John Chobany
District Superintendent"

The above two letters were sent in accordance with the action of the school board and each year the district superintendent met personally with plaintiff prior to beginning his teaching and explained to him the terms under which he was

being hired, and plaintiff testified that he understood the terms and that the job would last only as long as there were sufficient ESEA funds.

When asked by his counsel what his understanding of the nature of his employment with defendant school district was, plaintiff replied: "It was as it says, that I was hired as a teacher under the ESEA Title I program to teach remedial mathematics. I believed that it was a year by year program, that my being hired in, say 1972, did not necessarily mean that I would be hired back in 1973."

In the summer of 1973, defendant school district was notified that it would receive a drastic cut in ESEA Title I funds and the school board determined to abandon the remedial mathematics program, and on August 23, 1973, the following letter was sent to plaintiff by the district superintendent:

"Dear Applicant,

"Due to a drastic cut in Federal E.S.E.A. funds the Conemaugh Township Area School Board of Directors at the regular meeting on August 21, 1973, voted to discontinue the E.S.E.A. remedial programs in both the elementary and secondary schools.

"We certainly appreciate your interest in our school district in submitting an application for one of these positions.

Sincerely yours,
/s/ John Chobany
John Chobany
District Superintendent"

The letters sent to plaintiff by the district superintendent were the only written evidence of employment of plaintiff, and there was no formal written contract such as is prescribed by the School Code.

Plaintiff brought this action in mandamus to require the school district to reinstate plaintiff with back salary.

We had occasion to review a similar case in Joseph J. Streletz v. Shade-Central City School District, No. 22 Civil 1974, where a teacher was suspended due to a reduction in the instrumental music program because of a decrease in ESEA Title I funds, and we held that plaintiff was lawfully suspended without any kind of hearing because there were no charges filed against the teacher wherein due process required a hearing.

In the present case, we have neither a suspension nor dismissal although the reason for the lack of employment is the same old reduction in Federal funds that has plagued many school boards in the past few years and made it difficult to plan proper educational programs.

The real issue in this case is whether or not plaintiff ever became a "professional employe" within the meaning of the Public School Code.

Plaintiff maintains that when he was first hired by the school district, he was hired as a "temporary professional employe" and that after teaching two years he obtained tenure and was a professional employe of defendant at the time of his discharge.

A temporary professional employe is defined in the Public School Code of March 10, 1949, P.L. 30, and art. I, secs. 101, et seq., as amended, 24 PS §1-101, in section 1101 (3), 24 PS §11-1101(3), as follows:

"The term 'temporary professional employe' shall mean any individual who has been employed to perform, for a limited time, the duties of a newly created position or of a regular professional

employe whose services have been terminated by death, resignation, suspension or removal."

Professional employe is defined in section 1101(1) of the code as: "those who are certified as teachers, supervisors, supervising principals, principals, assistant principals, vice-principals, directors of vocational education, dental hygienists, visiting teachers, home and school visitors, school counselors, child nutrition program specialists, school librarians, school secretaries, the selection of whom is on the basis of merit as determined by eligibility lists and school nurses."

Under normal circumstances, a teacher entering service for the first time enters as a temporary professional employe provided he is properly certified, and if he teaches for two years with satisfactory service, as is provided in section 1108(b) of the code, he reaches tenure status. Section 1108(a) requires that the district superintendent shall rate each temporary professional employe at least twice a year. No ratings were made in this case and if plaintiff were construed to be a professional employe, we would have to hold that the failure of the superintendent to rate plaintiff was tantamount to a satisfactory rating. See Elias v. Board of School Directors, 421 Pa. 260 (1966).

We cannot agree, under the facts of this case, that this plaintiff was ever a professional employe within the meaning of the School Code.

Plaintiff made application for employment which he knew was not intended to be either permanent or as a part of the regular teaching staff of the school system. The evidence shows that for two separate years plaintiff entered upon his duties as a "special remedial teacher" under an E.S.E.A. Title I pro-

gram after having received a letter from the district superintendent each year with the following paragraph:

"It is the intention of the Board to employ you for this project only, and not to employ you as part of the regular teaching staff of the school system, nor as a professional employe within the definition of the school code."

This was the agreement, pure and simple, and no other contract was ever offered by the school district or demanded by plaintiff. This is not a case of an ambiguous contract or one where any misunderstanding took place concerning the terms of employment.

Taggert v. Board of Directors of Canon-McMillan Joint School System, 409 Pa. 33 (1962), sets forth the elements necessary for a valid and enforceable contract under the School Code.

To demand tenure, a teacher must have a valid written contract. See Wenders v. White Mills Independent School District, 171 Pa. Superior Ct. 39 (1952); also, Felix v. Fairfield Township School District, 32 Westmoreland 207 (1950).

Since there has been neither a suspension nor dismissal, Local Agency Law is not applicable and plaintiff was not entitled to a hearing. See Streletz v. Shade-Central City School District, supra, and the Local Agency Law of December 2, 1968, P.L. 1133, 53 PS §11301, et seq.

## CONCLUSIONS OF LAW

1. Plaintiff was not a professional employe of Conemaugh Township Area School District under the provisions of the Public School Code.

2. Plaintiff was neither suspended nor dismissed under the Public School Code.

3. Plaintiff is not entitled to a hearing under the Local Agency Law.

4. Plaintiff is not entitled to reinstatement with back pay.

## ORDER

Now, October 1, 1974, the complaint is dismissed with costs on plaintiff.